**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 23, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DARIUS CARLTON HILL,

    Defendant - Appellant.

No. 20-1018
(D.C. No. 1:17-CR-00371-RBJ-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McHUGH**, and **EID**, Circuit Judges.
_____

Darius Carlton Hill, proceeding pro se[1], appeals the sentence imposed following revocation of his initial term of supervised release. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Hill is pro se, we construe his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Garza v. Davis*, 596 F.3d 1198, 1201 n.2 (10th Cir. 2010).

## Background

In February 2018, Hill pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to eight months' imprisonment and three years of supervised release, the maximum allowable term of supervised release for Hill's Class C felony conviction, *see* 18 U.S.C. § 3583(b)(2). He started serving his supervised release term in June 2018.  Less than a year later, the government alleged that he committed several violations of the conditions of his release and the district court modified the conditions to require that he reside at a residential reentry center.  Then, in late 2019, Hill's probation officer filed a petition for revocation alleging that Hill had committed eleven violations of the terms of his release.

Hill agreed to admit to three release violations: possession and use of a controlled substance (the drug violation), making false statements to his probation officer, and failure to participate in mental health treatment as directed.  In exchange, the prosecution agreed to dismissal of the remaining violation allegations.  The parties also agreed to make a joint recommendation that he be sentenced to eleven months' imprisonment, with half of that time to be served in a community corrections facility, plus a supervised release term.  After a hearing in January 2020, the district court revoked Hill's supervised release and resentenced him to eleven months' imprisonment followed by twenty-five months of supervised release.  The court declined to order that any part of the sentence be served in a community corrections facility, explaining that it had "no objection at all if [Hill] earns the right to have

2

some significant part of his sentence converted to the halfway house, but I'm not going to order it." R. Vol. 2 at 87.

## Discussion

Hill challenges the sentence imposed following revocation of his initial period of supervised release on the ground that it is contrary to law and is both procedurally and substantively unreasonable.

### 1. Standard of Review

As pertinent here, we will reverse a sentence imposed after a defendant violates the terms of supervised release only if the sentence was "imposed in violation of law" or was "plainly unreasonable." *United States v. Kelley*, 359 F.3d 1302, 1304 (10th Cir. 2004) (internal quotation marks omitted); *see* 18 U.S.C. § 3742(e). "When we review a sentence for reasonableness, our review includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *United States v. Griffith*, 928 F.3d 855, 872 (10th Cir. 2019) (internal quotation marks omitted).

Ordinarily, we review the legality of a sentence de novo. *United States v. Price*, 75 F.3d 1440, 1446 (10th Cir. 1996). However, we review unpreserved challenges to the legality of a sentence for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (reviewing unpreserved claim for plain error). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously

3

affects the fairness, integrity, or public reputation of judicial proceedings."
*Gonzalez-Huerta*, 403 F.3d at 732 (internal quotation marks omitted).

We review preserved challenges to the procedural reasonableness of a sentence under the abuse-of-discretion standard. *United States v. Lucero*, 747 F.3d 1242, 1246 (10th Cir. 2014). We apply the same standard in reviewing preserved challenges to the substantive reasonableness of a sentence. *United States v. Carter*, 941 F.3d 954, 960 (10th Cir. 2019). Under that standard, we review the district court's legal conclusions de novo and its factual findings for clear error, *Lucero*, 747 F.3d at 1246, and we will reverse a sentence only "if it is arbitrary, capricious, whimsical, or manifestly unreasonable," *id*. at 1251 (internal quotation marks omitted).

We review unpreserved procedural reasonableness challenges for plain error. *United States v. McBride*, 633 F.3d 1229, 1233 (10th Cir. 2011). We review unpreserved substantive reasonableness challenges for reasonableness if the defendant argued for a lower sentence in the district court. *United States v. Mancera-Perez*, 505 F.3d 1054, 1059 (10th Cir. 2007). But when a defendant fails before sentencing "to offer any argument whatsoever for a lower sentence and, indeed, agreed . . . that the length of the sentence imposed was reasonable," any argument that the sentence is unreasonably long is "invited and waived." *Id.* (emphasis omitted).

## 2. Legality of Hill's Supervised Release Term

Hill first claims his new supervised release term is illegal because it impermissibly extends the length of his original supervised release term beyond the

three-year statutory maximum. The parties' sentencing agreement contemplated the twenty-five month supervised release term, and Hill did not raise this claim in the district court. Accordingly, we review for plain error.[2] *See Gonzalez-Huerta*, 403 F.3d at 732. We find no error, much less plain error, because Hill's claim is premised on a misunderstanding of the district court's post-revocation sentencing authority.

The scope of the district court's sentencing authority following revocation of supervised release is governed by 18 U.S.C. § 3583. "As a general matter, subsection (e)(3) dictates the term of imprisonment that can be imposed following revocation, and subsection (h) dictates the term of supervised release that can be imposed following revocation." *United States v. Collins*, 859 F.3d 1207, 1224 (10th Cir. 2017). As pertinent here, after finding that Hill violated the conditions of his release, the district court had authority to revoke supervised release and "require [him] to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision," provided the post-revocation

---

[2] Hill's sentencing recommendation did not waive his argument challenging the legality of the sentence imposed. *See United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008) (failure to object to sentencing recommendation and stipulation that it was based on correct guidelines calculation did not waive challenge to calculation because there was "nothing in the record to suggest that counsel actually identified the issue related to [the defendant's] sentencing enhancement and either invited the court to make the particular error or abandoned any claim that the enhancement did not apply"). But for the reasons we have stated, plain error review applies.

prison sentence did not exceed two years. 18 U.S.C. § 3583(e)(3). The court also had authority to require Hill to serve "a term of supervised release after imprisonment . . . not [to] exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." *Id.* § 3583(h). More specifically, the district court had authority to place Hill on supervised release for a maximum of three years less any term of post-revocation imprisonment of up to two years. *See United States v. Hernandez*, 655 F.3d 1193, 1198 (10th Cir. 2011).

The sentence imposed following revocation of Hill's supervised release was within these statutory limitations. Specifically, the district court sentenced him to eleven months' imprisonment, which is within § 3583(e)(3)'s two-year limit, plus twenty-five months of supervised release, which is the maximum three-year term of supervised release permitted under § 3583(b)(2), less the new eleven-month prison term, *see* § 3583(h).

Hill complains that he started serving his original supervised release term in June 2018 and that he will not finish serving his new one until more than three years after the June 2018 start date. As we understand his argument, he maintains that his new supervised release term is an unauthorized extension of his original term because he cannot complete it within the initial three-year period. He is effectively seeking aggregation of his supervised release terms, *i.e.*, credit against the new term for the

6

time served on supervised release under the original term.  But that is not how the statute works.

Subsection (h) plainly permits a court to impose both imprisonment and an additional term of supervised release after revoking the original term of supervised release, and subsection (e)(3) expressly provides that a defendant is not entitled to credit against a post-revocation term of imprisonment for time previously served on supervised release.  We have held that although § 3583(e)(3) does not require aggregation of post-revocation imprisonment, § 3583(h) "require[s] a district court to aggregate and credit all prior prison terms when determining the maximum amount of supervised release it can impose for any revocation."  *Hernandez*, 655 F.3d at 1198. *See also United States v. Hunt*, 673 F.3d 1289, 1293 (10th Cir. 2012) ("§ 3583(e)(3) does not require courts to aggregate prior revocation imprisonment sentences when calculating a new [prison] sentence for a violation of supervised release conditions" but "§ 3583(h) [requires] courts [to] credit defendants for prior revocation [prison] sentences when imposing new periods of supervised release" (emphasis omitted)).

Contrary to the government's suggestion, however, *Hernandez* and *Hunt* do not address aggregation of supervised release terms—they only address aggregation of post-revocation imprisonment terms in calculating the amount of supervised release the court can impose.  But the answer to this separate aggregation question is clear from the statutory language.  Subsection (e)(3) does not specifically address whether a defendant is entitled to credit toward a new term of supervised release for supervised release time served under the initial sentence, but it allows a court to

7

order the defendant to serve only part of a supervised release term in prison and the rest—possibly even most of the term—on additional supervised release. "The clear import of the statute is to deny credit with respect to the entire term of supervised release regardless of how the court allocates that term between imprisonment and additional supervised release." *United States v. Leon*, 663 F.3d 552, 555 (2d Cir. 2011) (per curiam).

Accordingly, we hold that § 3583 does not require district courts to aggregate supervised release terms and that it permits courts upon revocation to restart the clock on the maximum supervised release term allowed under § 3583(b). Every other circuit that has addressed this issue has reached the same conclusion. *See, e.g.*, *United States v. Harris*, 878 F.3d 111, 120 (4th Cir. 2017) (holding that § 3583 does not require aggregation of supervised release terms and permits courts "to start anew with the maximum" supervised release term following each revocation); *United States v. Palmer*, 380 F.3d 395, 398 (8th Cir. 2004) (en banc) ("no statutory language indicates that new terms of supervised release are cabined by the supervised release term originally imposed"); *United States v. Gresham*, 325 F.3d 1262, 1268 (11th Cir. 2003) (explaining that because "a defendant is not entitled to credit for pre-revocation time served on supervised release," "the aggregate of pre-revocation and post-revocation supervised release terms may exceed the maximum length of supervised release that § 3583(b) dictates should attach to the underlying offense"); *United States v. Cade*, 236 F.3d 463, 466-67 (9th Cir. 2000) (holding that § 3583 does not "place[] a cap on the *aggregate amount of time* on supervised release that a

8

defendant might serve because of repeated violations," so "if a defendant repeatedly violates the conditions of supervised release, the court may repeatedly impose new terms of supervised release without credit for time served on supervised release").

Contrary to Hill's contention, then, he was not entitled to credit for the supervised release time he served under the initial sentence and the district court was not required to impose a post-revocation supervised release term that he could complete within the period of the original term. *See Leon*, 663 F.3d at 555 (holding that district court had authority to impose a post-revocation term of supervised release that extended beyond the end-date of the originally imposed term of supervision); *Palmer*, 380 F.3d at 398 (holding that post-revocation period of supervised release can exceed initial term of supervised release). The only limitations on the court's sentencing authority were the maximum term of imprisonment specified in subsection (e)(3) and the subsection (h) requirement that the new term of supervised release not exceed the term authorized in subsection (b)(2) for the offense of conviction minus any post-revocation prison term. Hill's new sentence is within those limitations. Accordingly, the district court did not err, let alone plainly err, in its application of §§ 3583(e)(3) and (h).

### 3. Procedural Reasonableness

Hill claims the sentence imposed following revocation is procedurally unreasonable because (1) the district court did not advise him that it was not bound by the parties' sentencing recommendation; and (2) he admitted to a Grade C

violation and the district court sentenced him for a Grade B violation. We reject the first contention and need not resolve the second one.

### *Sentencing Advisement*

Hill complains that the district court did not advise him it was not bound by the parties' sentencing recommendation. He did not raise this argument in the district court, so we again apply a plain error standard on review. *See McBride*, 633 F.3d at 1233.

A sentencing recommendation made pursuant to a plea agreement is not binding on the court, Fed. R. Crim. P. 11(c)(1)(B), and before accepting the defendant's guilty plea to a criminal offense, the court must advise him of the possible penalties and that he has no right to withdraw the plea if the court does not follow the sentencing recommendation, *id.* 11(b)(1)(H), (c)(3)(B). However, revocation hearings are "not part of a criminal prosecution," so "[t]he procedures that apply at a revocation hearing are less formal than those that apply at a plea hearing." *United States v. Fay*, 547 F.3d 1231, 1234 (10th Cir. 2008) (internal quotation marks omitted); *see also* Fed. R. Crim. P. 32.1(b)(2)(A)-(E) (listing rights a defendant is entitled to at a revocation hearing). "[T]he defendant has the implicit right to admit his guilt or to contest the alleged violation of the terms of his supervised release," but there is no requirement that the court provide the defendant with a full-blown Rule 11 plea advisement before accepting his admission. *Fay*, 547 F.3d at 1234.

Hill cited no authority supporting his contention that the district court was required to advise him that it was not bound by the parties' sentencing

10

recommendation, and we are not aware of any. In any event, Hill had ample notice that the court was not bound by the parties' recommendation despite the court's failure to provide an express advisement.

Specifically, before the revocation hearing, Hill's probation officer filed a Supervised Release Violation Report explaining that Hill could be sentenced to up to two years in custody plus a term of supervised release, and that the applicable guidelines range was between eight and fourteen months in custody. In his objection to the Report, Hill argued that the drug violation was a Grade B violation for which the guidelines range was eight to eleven months, and he outlined the terms of the parties' sentencing recommendation. Consistent with the probation officer's Report, defense counsel explained at the beginning of the revocation hearing that the applicable guidelines range for Hill's violations was between eight and fourteen months' imprisonment. Counsel for both parties made the agreed-upon sentencing recommendation and the probation officer agreed to an eleven-month prison term. But he disagreed with the parties' recommendation that the court order that part of the sentence be served in a halfway house. He recommended instead that Hill be required to serve the entire term in prison unless the Bureau of Prisons chose to release him to a halfway house if he met its requirements for doing so.

The only issues for the court to decide at the hearing were the grade of the drug violation, how long the sentence would be, and where Hill would be ordered to serve it. And the colloquy between the court, counsel, and the probation officer made it clear that the court had the discretion to reject the parties' recommendation,

11

to impose any sentence within the applicable range, and to decide whether to order that Hill could serve all or part of the sentence in a halfway house. Everyone at the hearing, including Hill, should have understood that the court was not bound by the parties' sentencing recommendation.

Even if Hill could establish that the district court plainly erred by not expressly advising him that it was not bound by the recommendation, he would not be entitled to relief because he has not shown that the error affected his substantial rights. To do so, he would have to show "a reasonable probability that, but for the error, he would not have entered the [admission to the violations]." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). Hill has not even argued, much less made the required showing, that he would not have admitted the violations had he known he could be required to serve the entire eleven-month sentence in prison.

### *Grade of Violation*

Hill next contends that the district court erred by concluding that his drug violation was a Grade B violation. He argued in his sentencing memorandum and again at the revocation hearing that the drug violation was a Grade C violation, so we would ordinarily review his challenge to the district court's determination for an abuse of discretion. However, we need not resolve the issue because any error was harmless. *See* Fed. R. Crim. P. 52(a) (providing that "[a]ny error . . . that does not affect substantial rights must be disregarded"); *see also United States v. Ortiz-Lazaro*, 884 F.3d 1259, 1264 (10th Cir. 2018) (under an abuse of discretion standard, sentencing court's alleged error does not require vacatur if it is apparent

12

from the record that "the district court would have imposed the same sentence" absent the error (internal quotation marks omitted)); *United States v. Smith*, 815 F.3d 671, 679 (10th Cir. 2016) (not resolving whether district court improperly used pending state charge to calculate sentence where any error did not affect the sentence imposed).

As pertinent here, the grade of Hill's violation was potentially relevant to two issues: (1) the length of any post-revocation sentence imposed, *see* U.S. Sentencing Guidelines Manual (U.S.S.G.) §§ 7B1.3(b), 7B1.4; and (2) whether part of the post-revocation sentence could be served in community confinement, *see id*., § 7B1.3(c). But the grade determination ultimately did not matter to either issue.

As for the length of the sentence, the probation officer and the parties agreed that, based on Hill's Criminal History Category (which he does not challenge), the applicable advisory guidelines range for the drug violation was five to eleven months for a Grade C violation and eight to fourteen months for a Grade B violation. *Id*., § 7B1.4. The eleven-month sentence the district court imposed—and that Hill requested—was thus within the range for both a Grade B and a Grade C violation, and it is apparent from the transcript of the revocation hearing that the court's grade determination did not affect the length of Hill's sentence. Defense counsel acknowledged that the grade determination would have no impact given the unanimous recommendation for an eleven-month sentence. *See* R. Vol. 1 at 38 (stating in objection to probation officer's Report that "[n]o matter what the Court determines to be the highest grade of violation, the parties' agreed-upon . . .

13

sentence" is within the applicable guidelines range"); *id.*, Vol. 2 at 63 (stating at revocation hearing that "the different guideline ranges that could apply if this is a B or a C violation just aren't that different, and the agreed-upon recommendation of the parties . . . falls within either one"). Counsel also acknowledged there was no question the court would impose an eleven-month sentence when he said "[t]he only dispute [is] the amount of time spent in a halfway house versus imprisonment." *Id.*, Vol. 2 at 63. Then, in imposing sentence, the court recognized that "everyone seems to agree on an 11-month sentence" and the only "disagreement" was about where the sentence would be served. *Id.* at 86. Thus, any error in the district court's grade determination did not affect the length of Hill's sentence and was harmless. *See United States v. Gieswein*, 887 F.3d 1054, 1063 (10th Cir.) (erroneous guidelines calculation harmless where it was clear from the record that the court would have imposed the same sentence regardless of the correct Guidelines calculation), *cert. denied*, 139 S. Ct. 279 (2018), *reh'g denied*, 139 S. Ct. 1247 (2019).

The grade determination also had no impact on the decision about where Hill would be required to serve his sentence—the court could have allowed him to serve the minimum term of imprisonment in community confinement regardless of the grade determination. *See* U.S.S.G. § 7B1.3(c). Accordingly, we need not determine whether the district court abused its discretion by determining that Hill's drug violation was a Grade B violation. *See* Fed. R. Crim. P. 52(a); *see also Smith*, 815 F.3d at 679.

14

**4. Substantive Reasonableness**

Hill's final contention is that his sentence is too harsh compared to sentences imposed on other first-time violators of release conditions. Because Hill did not argue for a shorter sentence in the district court and conceded the appropriateness of his eleven-month sentence recommending it, he has waived any challenge to its substantive reasonableness. *See Mancera-Perez*, 505 F.3d at 1059.

In any event, because it is within the range suggested by the Commission's Policy Statement in § 7B1.3, the sentence is presumptively reasonable. *See McBride*, 633 F.3d at 1233. Hill's new contention that his agreed-upon, within-guidelines sentence is too harsh based on his anecdotal comparisons of his sentence to other offenders' sentences does not overcome the presumption of reasonableness. *See United States v. Franklin*, 785 F.3d 1365, 1372 (10th Cir. 2015) (explaining that "[n]o two cases are identical, and comparison of an individual sentence with . . . cases involving other defendants sentenced by other judges is almost always useless." (footnote and internal quotation marks omitted)).

## Conclusion

The sentence imposed upon revocation of Hill's initial term of supervised release is affirmed.

Entered for the Court

Allison H. Eid
Circuit Judge